UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00115-RGJ-RSE

**LATRICE D.**                                                                                                    **PLAINTIFF**

VS.

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Latrice D.'s ("Plaintiff's") applications for disability insurance and supplemental security income benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 11) and the Commissioner (DN 13) have filed a Fact and Law Summary. The District Judge referred this case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 10).

I.  Findings of Fact

Plaintiff is 29 years old, lives in Louisville, Kentucky, and completed four or more years of college. (Tr. 204, 237, 242). Plaintiff is presently unemployed but has past relevant work experience as a peer support specialist at Seven Counties from October 2018 to July 2019 and a janitorial custodian with Compass Group for approximately two months in 2016. (Tr. 242; Tr. 40–41). On March 30, 2020, Plaintiff protectively filed for disability insurance benefits ("DIB") under

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

Titles II and XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3) ("Act"), and for supplemental security income ("SSI") benefits under Title XVI of the Act, alleging disability beginning on July 30, 2019. (Tr. 207–08). Plaintiff claimed she could not perform work at substantial gainful levels due to borderline personality disorder, major depressive disorder, anxiety disorder, social anxiety, and a learning disability. (Tr. 241). Her applications were denied initially on May 4, 2020 (Tr. 90) and upon reconsideration on September 18, 2020 (Tr. 95). At Plaintiff's request, a hearing was conducted in Louisville, Kentucky before Administrative Law Judge Dwight Wilkerson ("ALJ Wilkerson") on June 4, 2021. (Tr. 31–56). ALJ Wilkerson issued an unfavorable decision on September 21, 2021. (Tr. 13–26).

ALJ Wilkerson applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since March 20, 2020. (Tr. 18). Second, Plaintiff has the severe impairments of depression, anxiety, borderline personality disorder, attention deficit hyperactive disorder (ADHD), borderline intellectual disorder, and cannabis use disorder. (Tr. 19). ALJ Wilkerson also found that Plaintiff has the non-severe impairment of obesity. (*Id.*). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). ALJ Wilkerson then determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> She can understand, remember, and carry out simple tasks and can perform work requiring little independent judgment and involving minimal variations; she can perform work in a lower stress work environment without strict production quotas, fast pace, or interaction with the public, but she can interact frequently as needed with supervisors and peers sufficiently for task completion; and she can adapt to occasional changes with reasonable support and structure.

(Tr. 20–21). Fourth, ALJ Wilkerson found Plaintiff unable to perform any of her past relevant work as actually or generally performed. (Tr. 24). Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Wilkerson determined there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 24–25).

Based on this evaluation, ALJ Wilkerson concluded that Plaintiff was not disabled, as defined in the Social Security Act, from March 20, 2020 through the date of his decision. (Tr. 25). Plaintiff sought review of ALJ Wilkerson's decision. (Tr. 201–03). The Appeals Council declined review on December 27, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings are supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations

omitted).

III. Conclusions of Law

Plaintiff presents a host of claims. First, she suggests ALJ Wilkerson erred in finding she did not have a listing-level impairment at step three. (DN 11, at PageID # 789). Second, Plaintiff argues ALJ Wilkerson's RFC determination is contradicted by objective evidence in the record. (*Id.* at PageID # 793). Plaintiff also offers that ALJ Wilkerson's finding related to transferability of job skills was plagued by his erroneous RFC determination. (*Id.* at PageID # 798). Lastly, Plaintiff contends ALJ Wilkerson's questions to the vocational expert at the hearing did not accurately portray her mental impairments. (*Id.*). Relying on these objections, Plaintiff submits ALJ Wilkerson's decision was not supported by substantial evidence. (*Id.*).

The Commissioner counters that Plaintiff failed to meet her burden of demonstrating a presumptively disabling listed impairment at step three, and that ALJ Wilkerson did not err in finding the same. (DN 13, at PageID # 810). The Commissioner further argues that ALJ Wilkerson "exhaustively considered" the record evidence and fashioned an RFC supported by it. (*Id.* at PageID # 818). The Commissioner did not address Plaintiff's criticism of ALJ Wilkerson's transferability of job skills finding or his questions to the vocational expert during the hearing.

A. Listed Impairments

At step three of the sequential evaluation, ALJ Wilkerson considered whether Plaintiff's mental impairments, singly or in combination, met the criteria of Listing 12.02, 12.04, 12.06, or 12.08. (Tr. 19). Plaintiff believes her impairments satisfy the "Paragraph B" criteria required by each of these listings because she has two marked limitations in her mental functioning. (DN 11, at PageID # 792). The Commissioner suggests Plaintiff failed to show her impairments met any of the diagnostic criteria of a listing-level impairment. (DN 13, at PageID # 809). The Commissioner

also notes that ALJ Wilkerson considered the evidence Plaintiff relies on in her fact and law summary and appropriately determined it was insufficient to show a disabling impairment. (*Id.* at PageID # 809–15).

A claimant must meet a substantial burden to demonstrate a listed impairment at step three. Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). To be considered disabled at step three, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). "An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment." *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-CV-22, 2014 WL 700424, at *4 (W.D. Mich. Feb. 24, 2014) (citing 20 C.F.R. §§ 404.1525(d); 416.925(d)). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high. *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019).

Plaintiff does not allege that she meets a specific listing. Nor does she attempt to demonstrate that she meets all the elements of any particular listing. Rather, she simply argues she meets the "Paragraph B" criteria and, presumably then, meets any or all of the four listings ALJ Wilkerson considered. These include neurocognitive disorders under Section 12.02; depressive, bipolar, and related disorders under Section 12.04; anxiety and compulsive disorders under Section 12.06; and personality and impulse-control disorders under Section 12.08. (Tr. 19).

A commonality among the listings ALJ Wilkerson considered is the Paragraph B criteria. Under each of these sections, the regulations provide that a claimant must demonstrate the following:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>    1. Understand, remember, or apply information.
>    2. Interact with others.
>    3. Concentrate, persist, or maintain pace.
>    4. Adapt or manage oneself.

20 C.F.R. Pt. 404. Subpt. P. App. 1, §§ 12.02B, 12.04B, 12.06B, 12.08B. Considering the Paragraph B criteria, ALJ Wilkerson found the severity of Plaintiff's mental impairments did not meet or medically equal any of the four listings. (Tr. 19). Specifically, ALJ Wilkerson found Plaintiff had only moderate limitations in each of the areas of mental functioning. (Tr. 19–20).

As ALJ Wilkerson noted, "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment," which requires a more detailed analysis of the areas of mental functioning. (Tr. 21).[2] Even so, ALJ Wilkerson thoroughly considered each of the four subparts of the Paragraph B criteria and cited to medical evidence supporting his conclusions. (*See* Tr 19–20). This included Plaintiff's ten-year pursuit of her undergraduate degree (Tr. 19); her social anxiety, low-distress tolerance, and difficulty maintaining interpersonal relationships (Tr. 20); and her issues with anger, self-mutilation, and suicidal ideation (*id.*). This is more than sufficient under the regulations.

Plaintiff has failed to demonstrate that she satisfies the Paragraph B criteria required to meet Listings 12.02, 12.04, 12.06, and 12.08. ALJ Wilkerson properly determined that none of

---

[2] *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 656 (6th Cir. 2009) (explaining that "the requirement that an ALJ assign a score to each of the B criteria" is more of an "'adjudicatory tool' designed to aid the SSA in determining the severity of the claimant's mental impairment . . . as opposed to a regulation intended primarily to confer important procedural benefits upon claimants").

Plaintiff's impairments, alone or in combination, reached listing level. Plaintiff did not meet the substantial burden of demonstrating a listed impairment at step three, and ALJ Wilkerson did not err in continuing through the sequential analysis. The Court, therefore, does not recommend remand on this basis.

## B. Residual Functional Capacity Finding

Plaintiff next claims ALJ Wilkerson's RFC finding was erroneous because the record evidence does not support that she can work on a full-time basis. (DN 11, at PageID # 794). Plaintiff specifically criticizes ALJ Wilkerson's failure to "rationalize" her "documented extremely low stress tolerance and extremely low attention/concentration" and her poor education and vocational history. (*Id.* at PageID # 793, 794). The Commissioner submits that ALJ Wilkerson considered these issues alongside other evidence, including Plaintiff's own hearing testimony, and crafted an RFC that took into account the entire record. (DN 13, at PageID # 815).

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In addition to considering medical records and physician opinions in forming their RFC, ALJs must assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In assessing Plaintiff's limitations, ALJ Wilkerson found that "[w]hile she certainly has significant mental difficulties, the record does not support complete incapacity for all forms of gainful work." (Tr. 22). In support of this finding, ALJ Wilkerson detailed Plaintiff's medical history, which included treatment for "significant" anxiety and depression, personality disorder,

poor coping skills, anger, thoughts of suicide, and self-mutilation. (Tr. 23). But he also noted treatment records indicating Plaintiff's display of generally normal mood, behavior, and affect during the early part of 2020. (*Id.*). Similarly, ALJ Wilkerson acknowledged Plaintiff's inpatient treatment and psychiatric hospitalization in 2020, but noted Plaintiff admitted she stopped taking all her medication around this time and that some of her anxiety was attributed to the pandemic and financial issues. (*Id.*).

ALJ Wilkerson also addressed Plaintiff's November 2020 psychological exam, where she reported feeling stable after weaning off her mental health medications and that she was pursuing a degree in psychology. (*Id.*). Here, ALJ Wilkerson acknowledged that Plaintiff's IQ score "was in the borderline range of intellectual classification," but found she was not "cognitively disabled" because she has not been diagnosed with a learning disability, she has nearly completed a college degree (however long it took), and she plans to attend graduate school. (*Id.*; Tr. 22). Moreover, while ALJ Wilkerson recognized that Plaintiff was diagnosed with attention-deficit hyperactivity disorder ("ADHD"), adjustment disorder with anxiety, and borderline intellectual functioning during the November 2020 exam, he also considered that she "did not present with any debilitating symptoms of depression or anxiety." (Tr. 23). He further noted that treatment with medication greatly improved Plaintiff's symptoms. (*Id.*).

After discussing Plaintiff's medical history, ALJ Wilkerson "accounted for [Plaintiff's] mental health impairments by limiting her to simple tasks, with little independent judgment, minimal variation, in a low stress environment, with limited social interaction and only occasional changes." (Tr. 24). ALJ Wilkerson found no additional limitations warranted "based on her gaps in treatment, non-compliance with medication at times and documented improvement with treatment noted both in objective findings and her hearing testimony." (*Id.*). He again

acknowledged that Plaintiff "has struggled somewhat socially," but noted her medication "helped with her outbursts." (*Id.*). Lastly, ALJ Wilkerson recognized that Plaintiff "has some issues with concentration," which he accounted for by "limit[ing] her to simple tasks in a low stress environment without strict quotas, fast pace or interaction with the public." (*Id.*).

It is clear from his decision that ALJ Wilkerson considered all the medical evidence Plaintiff submitted. And as the Commissioner notes, ALJ Wilkerson explicitly discussed the evidence Plaintiff now relies on. Plaintiff even concedes this point at various times in her fact and law summary. (*See* DN 11, at PageID # 794) ("The ALJ adds further evidence contradicting his conclusion that she can function at an acceptable pace by noting she was in a vocational rehabilitation program for eight years with her representative noting she had a long history of mental health issues. . . . He then recounts that [Plaintiff] left that job because of anxiety and getting things mixed up, she left a hostess job after three weeks. She does not learn things quickly and struggles with negative reviews from her bosses."). So while she does not allege ALJ Wilkerson failed to follow the regulations' articulation requirements, Plaintiff simply believes he should have reached a contrary conclusion. It is well settled that an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While evidence may exist that could support a different finding, ALJ Wilkerson's consideration of the record was thorough, and his RFC determination was well supported. Plaintiff has not pointed to any evidence that ALJ Wilkerson failed to consider, and the undersigned finds no error.

Lastly, Plaintiff briefly suggests ALJ Wilkerson erred in finding the state agency consultants' opinions generally persuasive because he "said nothing about new and material evidence that came into the record after their review." (DN 11, at PageID # 797). "[A]n ALJ may

9

rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts.'" *See Durard v. Comm'r of Soc. Sec.*, No. 5:20-CV-00102-LLK, 2021 WL 467208, *2 (W.D. Ky. Feb. 9, 2021) (quoting *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2008)). ALJ Wilkerson explicitly stated that the state agency opinions were consistent with and supported by the documented evidence showing "some limitations but maintained capabilities," but he nevertheless "assigned additional restrictions[] limiting the claimant to no contact with the public and only occasional changes based on the overall objective findings and hearing testimony." (Tr. 24). ALJ Wilkerson clearly considered the entire record, including evidence submitted after the consultants rendered their opinions, in fashioning his RFC.

ALJ Wilkerson's RFC determination, which provided for several non-exertional limitations to accommodate Plaintiff's mental impairments, is supported by substantial evidence. The Court does not recommend remand on this basis.

### C. Transferability of Job Skills

In contesting ALJ Wilkerson's finding related to transferability of job skills, Plaintiff simply states, "The record as a whole as argued above in Finding 4, does not support skills allowing sustained work. Moreover, all claimant's limitations are non-exertional and the Grid has no application. *Shelman v. Heckler*, 821 F.2d 316, 321-322 (6th Cir. 1887)." To the extent this two-sentence contention rests on Plaintiff's attack on ALJ Wilkerson's RFC determination, which the undersigned finds well supported, the Court does not recommend remand.

As for Plaintiff's cursory mention of "the Grid" and its applicability to her non-exertional limitations, and her citation to a Sixth Circuit opinion without any explanation of its applicability, the Court declines to consider a contention so threadbare. It is well-established that "issues

10

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) ("We decline to identify and address the arguments that Petitioner could have made but did not, and instead find that he has waived any possible challenge[.]"). Since Plaintiff offers this position wholly undeveloped, the undersigned deems it waived.

### D.  Hypotheticals Posed to Vocational Expert

Lastly, Plaintiff offers that the hypothetical questions ALJ Wilkerson posed to impartial vocational expert Stephanie Barnes ("VE Barnes") during the hearing did not accurately portray her mental impairments. (DN 11, at PageID # 798). Specifically, she argues ALJ Wilkerson improperly omitted "limitations of perceptual reasoning, working memory and the need for additional time to complete tasks" from the hypotheticals. (*Id.*). Plaintiff claims these limitations are "uncontradicted" by the record and ALJ Wilkerson should have articulated his reason for failing to include them. (*Id.*).

During the first four steps of the sequential analysis, the claimant has the burden of proof, but at step five the burden shifts to the Commissioner. *See Young v. Secretary of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)); *Cole v. Secretary of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). At step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987)).

At the hearing, ALJ Wilkerson posed several hypotheticals to VE Barnes. First, he asked her to assume the hypothetical individual was able to understand, remember, and carry out simple tasks requiring little independent judgment, and involving minimal variations in a lower stress work environment without strict quotas, fast pace, or more than occasional interaction with the public. (Tr. 52–53). This individual could interact frequently as needed with supervisors and peers, specifically for task completion, and could adapt to occasional changes with reasonable support and structure. (Tr. 53). VE Barnes testified that this hypothetical individual could not perform any of Plaintiff's past relevant work. (*Id.*). ALJ Wilkerson then asked whether a hypothetical individual with those limitations and with Plaintiff's vocational profile in terms of age, education, and work experience could perform any work in the national economy. (*Id.*). VE Barnes testified that there were jobs in the national economy that the hypothetical individual could perform. (*Id.* at 53–54).

ALJ Wilkerson next inquired into whether the hypothetical individual would be precluded from competitive work if the individual could not interact with the public. (Tr. 54). VE Barnes stated that jobs existed in the national economy that the individual could still perform. (*Id.*). ALJ Wilkerson then asked whether the hypothetical individual's need to be off task or to miss work at times would be generally tolerated. (*Id.*). VE Barnes testified that no more than six minutes off-task per hour in brief intermittent time periods and no more than seven to eight absent days in a calendar year would generally be tolerated. (Tr. 54–55).

Having reviewed the record evidence, the undersigned finds no error with the hypotheticals posed to VE Barnes. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Although Plaintiff suggests ALJ Wilkerson should have accounted for her need for additional time to complete tasks and for limitations of perceptual reasoning and working memory, ALJ Wilkerson's hypotheticals essentially mirrored his RFC finding, which the Court has already deemed well supported. Moreover, in providing that the hypothetical individual could not meet strict quotas or work at a fast pace, ALJ Wilkerson largely accounted for Plaintiff's need for additional time for task completion. The hypotheticals accurately portrayed Plaintiff's limitations and allowed the vocational expert to consider the affects of her mental limitations on her ability to perform sustained work. The Court finds no error with ALJ Wilkerson's examination of the impartial vocational expert at the hearing or his evaluation of Plaintiff's claim at step five generally. For these reasons, the Court does not recommend remand on this basis.

## RECOMMENDATION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel of Record